**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAMILTON PARK HEALTH CARE CENTER, LTD., | CIVIL ACTION NO. 13-621 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| 1199 SEIU UNITED HEALTHCARE WORKERS EAST, | |
| Defendant. | |

**COOPER, District Judge**

### INTRODUCTION

Plaintiff, Hamilton Park Health Care Center, Ltd. ("Hamilton Park") filed a petition requesting this Court to vacate the arbitration award ("Award") entered by Arbitrator Martin Scheinman ("Arbitrator Scheinman"), and dated November 7, 2012. (Dkt. 1 at 1 (hereinafter "the Petition").)[1] The Award accompanied a nineteen page opinion and established the terms and conditions of employment for collective bargaining unit employees at Hamilton Park, and nine other nursing homes, through June 30, 2016. (Dkt. 17-2 at 48–71.)[2] Defendant, 1199 SEIU United Healthcare Workers East ("the Union") opposed the Petition and filed a counterclaim to enforce the Award. (Dkt. 9 at 5; dkt. 62-1; dkt. 64.)

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by referring to the docket entry numbers by the designation of "dkt." Pincites reference ECF pagination.

[2] The Award, which is three pages, follows the opinion. (Id. at 68–70.)

The Court will resolve the Petition without oral argument pursuant to Local Civil Rule 78.1(b).  The Court, for the below-stated reasons, will confirm the Award.

I.    **BACKGROUND**

   A.    **The Parties**

Hamilton Park is a long-term care facility incorporated under the laws of New Jersey. (Dkt. 1 at 3; dkt. 63-1 at 5.)  It is a member of a multi-employer bargaining group ("Bargaining Group") comprised of ten long-term care facilities.  (Dkt. 63-1 at 5.)[3]  Each facility in the Bargaining Group is a separately-owned and distinct entity.  (Id.)  The Bargaining Group, however, was collectively represented by Morris Tuchman, Esquire, during prior labor negotiations with the Union.  (Id.)

The Union is a labor organization with its principal offices in New Jersey.  (Dkt. 1 at 3.)  The Union was bestowed with exclusive bargaining power "for all employees at each facility of the [Bargaining Group] with the exception of excluded job classifications including office clerical employees, supervisors, registered nurses, licensed practical nurses, watchmen and guards." (Dkt. 63-1 at 5.)

   B.    **The CBA**

The parties executed a Collective Bargaining Agreement ("CBA") on March 13, 2008. (Dkt. 9-1 at 2.)   The CBA adopted Articles related to the terms and conditions of employment for the Union through February 28, 2013.  (See generally id. at 2–36.)  Article 34.1 of the CBA, however, granted the Union the option to reopen and negotiate the terms of

---

[3] The other members of the Bargaining Group are not relevant to the Court's analysis here.  In fact, Hamilton Park is the only member of the Bargaining Group to challenge the Award.  (Dkt. 62-1 at 6.)

the CBA up to ninety days before February 28, 2012 (hereinafter, "Reopener Article").  (Id. at
32.)  Any terms negotiated pursuant to the Reopener Article were "to be effective for the fifth
… year" of the CBA, which would then terminate on February 28, 2013.  (Id.)

    Pursuant to Article 34.1 of the CBA, if the Union triggered the Reopener Article
and could not reach agreement with the Bargaining Group, the parties were required to
submit "the items not yet settled … to arbitration as herein set forth."  (Id.)  The CBA
deemed any arbitration award "final and binding" and appointed Arbitrator Scheinman as
the "named arbitrator."  (Id. at 12, 32.)  With respect to the scope of Arbitrator
Scheinman's jurisdiction, the CBA provided the following, in relevant part:

> [Article 11.5]  The Arbitrator may not add to, subtract from, or otherwise
> amend or modify the terms of this Agreement.

(Id. at 12.)

> [Article 11.7]  ….The Arbitrator is empowered to determine his jurisdiction;
> all questions of arbitrability; to grant all appropriate remedies; to include in
> his award mandatory and injunctive relief; and to determine the appropriate
> measures of damages.
>
> The procedures herein provided for settling all grievances as discussed
> herein shall be the sole and exclusive remedy of the Union [and the
> Bargaining Group] covered by this Agreement, and shall be used to the
> exclusion of any other means available and such settlement procedure shall
> be (except to enforce, vacate or modify awards) in lieu of any and all other
> remedies ….  It is agreed by the parties that arbitration is the preferred
> method for the resolution of all disputes under this agreement including
> payment delinquencies.  The parties commit themselves to utilize the
> arbitration procedure provided for in this Agreement to resolve any and all
> such disputes.

(Id. at 12–13.)

The CBA also contained Articles governing modifications to the agreement.  (Id. at 32

–33.)  The Articles pertinent to the Petition are set forth below in relevant part:

> [Article 33]  The terms and conditions of employment as set forth in this
> Agreement shall govern the relations between the Employer and his
> respective employees, and no deviation from or modifications of said terms
> and conditions of employment should be permitted.  However, if prior to
> this Collective Bargaining Agreement with the Union, the employees of the
> Employer enjoyed more favorable terms of employment, then such more
> favorable terms and conditions shall continue.

(Id. at 32.)

> [Article 34.3]  This Agreement shall not be changed, altered, modified or
> amended, unless in writing, and signed by the authorized representatives of
> the parties.

 (Id. at 33.)

## C.      Labor Negotiations and Arbitration

The Union invoked the Reopener Article to negotiate wages, hours, and general terms

and conditions of employment before the February 28, 2012 deadline.  (Dkt. 63-1 at 8.)

When negotiations between the Union and the Bargaining Group failed, the parties

commenced arbitration proceedings pursuant to Article 34.1 of the CBA.[4]  (Id.; see also dkt.

9-1 at 32.)  Arbitration commenced when Arbitrator Scheinman held a hearing on March 26,

---

[4] Article 34.1 states in pertinent part:

> This agreement shall become effective from March 13, 2008 and shall remain operative
> and binding upon the parties … and shall apply to all present and future establishments
> until midnight of February 28, 2013 …. The Union shall have the right ninety (90) days
> prior to February 28, 2012 to reopen and negotiate wages (minimum and across the
> board increases), hours and general terms and conditions of employment, to be
> effective for the fifth (5th) year of this agreement.  If the parties have not reached
> agreement by … February 28, 2012, the items not yet settled shall be submitted to
> arbitration as herein set forth....

(Id.)

2012 ("March 26, 2012 Hearing").  (Dkt. 17-2 at 51.)  The parties "submitted extensive

evidence and argument in support of their collective bargaining proposals" on that date.  (Id.

at 50–51.)  Arbitrator Scheinman briefly summarized the items discussed at the March 26,

2012 Hearing in his opinion.  (Id.)  Neither of the parties, however, submitted a formal record

of the March 26, 2012 Hearing to the Court.  According to the Union, the record of the March

26, 2012 Hearing consists solely of the opinion and the Award.  (Dkt. 63-2 at 13 ("The Union

argues that '[t]he only record in this case is the Award itself.'").)

      The parties discussed the Bargaining Group's contribution to the 1199 Greater Nursing

Home Benefit Fund ("Benefit Fund"), which allocated health care benefits to the Union, at the

March 26, 2012 Hearing.  (Dkt. 17-2 at 51; see also dkt. 9-1 at 25.)  The Union proposed that

the Bargaining Group increase the contribution rate from 29%, as required under Article 28.1

of the CBA, to 33.5% for the fifth year of the agreement.  (Dkt. 17-2 at 51; see also dkt. 9-1 at

25.)  Arbitrator Scheinman, however, did not believe that the Bargaining Group would agree to

the 4.5% increase over a single year, especially because the Union also requested modest pay

raises for that same year.  (Dkt. 17-2 at 51.)[5]

      Arbitrator Scheinman explained to the parties that his narrow one-year jurisdictional

window – spanning from February 28, 2012 through February 28, 2013 – might prevent him

from issuing a mutually-satisfying award during the March 26, 2012 Hearing.  (Id. at 51–52.)

He recommended that the "process of Interest Arbitration be expanded to permit an Award of

---

[5] According to Arbitrator Scheinman, increasing the contribution by 4.5% "in a single year to the
Benefit Fund" was "in all likelihood … unaffordable."  (Dkt. 17-2 at 51.)  He further described "the
Union's request for a 'modest' wage increase to help workers offset the enormous increases in costs
they had faced in their personal lives as a result of rising costs, especially gas and electric."  (Id.)

a longer term." (Id.)  He told the parties that expanding his jurisdiction would "spread out the increase necessary to the [Benefit Fund], to address, in an equitable manner, the [Union's] desire for a modest wage increase and, at the same time, to attempt to address the [Bargaining Group's] proposals for cost efficiencies to ameliorate the impact of higher labor and other costs despite lesser reimbursement from the government and private insurers." (Id. at 52.) According to Arbitrator Scheinman, both parties "tentatively" agreed to his request "for authority to issue an Award of longer duration." (Id.)[6]

The Union and the Bargaining Group also agreed to meet with Arbitrator Scheinman separately to further discuss proposals at the March 26, 2012 Hearing. (Id.)  Arbitrator Scheinman met privately with the Union that same day, and later conferred with the Bargaining Group on April 26, 2012. (Id.)  During these meetings, Arbitrator Scheinman "listened intently to the various proposals proffered by the parties, and requested and received additional evidence regarding their respective proposals." (Id. at 52.)  According to Arbitrator Scheinman, both parties agreed to expand his jurisdiction to permit a multi-year award at his discretion. (Id.)[7]

### D.  The Award and Opinion

Arbitrator Scheinman explained in his opinion that he believed that expanding his jurisdiction to permit a longer-term award would, inter alia, permit him to balance "the

---

[6] Arbitrator Scheinman acknowledged that his jurisdiction was originally limited to setting "the terms and conditions of employment for solely the fifth (5th) year of the Agreement." (Id. at 51.)

[7] Arbitrator Scheinman does not state how the parties consented to expanding his jurisdiction. (See id.)  However, the parties agree that Arbitrator Scheinman did not obtain written consent. (Dkt. 25 at 5 ("[Hamilton Park] relies on the absence of a signed writing by the parties authorizing a multi-year award.  The Union does not dispute that there is no signed writing by the parties authorizing a multi-year award, nor does the Award state that such a writing exists.").)

respective interests of the parties." (Dkt. 17-2 at 52.)  Arbitrator Scheinman stated, for

example, the following regarding the parties' bargaining interests:

> In formulating my Award … I have attempted to balance the respective
> interests of the parties.  Specifically, I have assured [that] the necessary
> contributions to the Benefit Fund will be made in a format designed to retain
> the current level of benefits while at the same time spreading out the cost to
> the [Bargaining Group].

(Id. at 52–53.)

Arbitrator Scheinman elected to expand his jurisdiction to meet the parties' competing

interests, and issued an Award for a term of March 1, 2012 through June 30, 2016.  (Id. at 68.)

He justified the decision by explaining that the longer-term Award ameliorated his initial

concern that the one-year jurisdictional window would not satisfy the parties' bargaining

interests, as set forth below:

> I have determined it is necessary to "bend the curve" so that the longer term cost
> to the [Bargaining Group] will moderate without overly impacting upon [the
> Union] workers, especially regarding their most basic needs; health care and
> take home pay.  My Award attempts to be mindful of the unbelievable pressures
> being faced by [the Union] workers while building in efficiencies for the
> [Bargaining Group] intended to contribute to a more stable and predictable work
> environment …. To this end, I have determined this Interest Arbitration shall
> establish a contract term of longer duration as it is necessary to provide both
> sides with greater certainty about costs and so as to phase in the increases I have
> awarded regarding contributions to the Benefit Fund which are necessary to
> retain the level of benefits being provided by the Benefit Fund.

(Id. at 61.)

The Award granted, inter alia, the Union the option to reopen and negotiate the terms

governing wage increases, hours, and general terms and conditions of employment one

hundred and twenty days before June 30, 2015.  (Id. at 68–70.)

7

### E.      Petition of Vacate

Hamilton Park petitioned to vacate the Award on January 31, 2013.  (Dkt. 1.)
Hamilton Park argued, <u>inter alia</u>, that Arbitrator Scheinman exceeded the scope of his
authority under the CBA by expanding the scope his jurisdiction.  (<u>See id.</u>)  The Court
provides the following summary of the Petition as it pertains to the arguments submitted by
Hamilton Park before this Court.

Hamilton Park sought leave for limited discovery to investigate whether Arbitrator
Scheinman: (1) exceeded the scope of his authority under the CBA; (2) conducted a fair
hearing; and (3) exhibited partiality in favor of the Union during the course of the arbitration
proceedings.  (Dkt. 17-1 at 4.)  Hamilton Park, in support thereof, submitted an affidavit of the
Bargaining Group's attorney, Tuchman, stating that he did not authorize Arbitrator
Scheinman to expand the scope of his jurisdiction.  (Dkt. 23-1 at 5–6.)  Hamilton Park later
admitted, however, that Tuchman refused to sign the affidavit.  (Dkt. 26 at 2.)

The Union opposed the motion for discovery, primarily arguing that courts have very
limited review over arbitration awards and also because Hamilton Park did not plead
allegations related to "arbitrator bias or partiality" in the first instance.  (<u>See, e.g.,</u> dkt. 19 at 1,
5–6.)  Hamilton Park, in response, moved to amend the Petition to include allegations related
to Arbitrator Scheinman's bias and procedural unfairness while the motion for discovery was
still pending.  (Dkt. 29-1.)  The Union opposed Hamilton Park's motion to amend the
Petition.  (Dkt. 33.)

The Magistrate Judge denied Hamilton Park's motions for discovery and for leave to
amend the complaint on November 13, 2013.  (Dkt. 35.)  The Magistrate Judge held that "the

question of whether … Tuchman gave consent on behalf of Plaintiffs [sic] to authorize Arbitrator Scheinman to issue a multi-year award … [did] not justify post-arbitration discovery." (Id. at 11.)  The Magistrate Judge, in so holding, declared that Hamilton Park "failed to make a showing sufficient to justify an order compelling discovery."  (Id.)  The Magistrate Judge also denied discovery with respect to this issue on the grounds that Hamilton Park: (1) could not produce a signed affidavit stating that Tuchman did not grant consent to expand the scope of Arbitrator Scheinman's jurisdiction; and (2) even "[m]ore troublingly" admitted that Tuchman refused to sign the affidavit.  (Id.)

The Magistrate Judge also found that Hamilton Park's claim of "arbitrator bias" lacked the requisite factual basis to overcome a presumption in favor of arbitration awards.  (Dkt. 35 at 6–7 ("Even when viewed in the light most favorable to [Hamilton Park], a reasonable person would not *have* to conclude that Arbitrator Scheinman was partial to [the Union.]").)  Likewise, the Magistrate Judge rejected arguments related to procedural unfairness for Hamilton Park's failure to allege facts that Arbitrator Scheinman committed prejudice toward any party.  (Id. at 7–8.)  Accordingly, the Magistrate Judge denied Hamilton Park's motion to amend the Petition for failure to state "a plausible claim for relief."  (Id. at 8.)

Hamilton Park filed a motion for reconsideration of the Magistrate Judge's decision denying discovery.  (Dkt. 40.)  Hamilton Park, in its letter brief, urged the Magistrate Judge to consider the previously-filed certifications of two Hamilton Park employees, Jacqueline Cousins and Donald Wuertz (hereinafter "Hamilton Park Certifiers").  (Id. at 1.)[8]  Hamilton

---

[8] Cousins is an Administrator of a Hamilton Park facility and member of the Bargaining Group.  (Id. at 13.)  Wuertz is the Chief Financial Officer of Hamilton Park.  (Id. at 13–14; see also dkt. 17-2.)

Park argued that the Hamilton Park Certifiers both "stated in no uncertain terms that they never authorized the expansion of Arbitrator Scheinman's jurisdiction – personally or through their attorney." (Id.) Hamilton Park sought leave for discovery to depose Tuchman with respect to this issue. (Id. at 2.) The Union opposed the motion as untimely-filed. (Dkt. 42.)

The Magistrate Judge denied the motion for reconsideration "on both procedural and substantive grounds." (Dkt. 44 at 2–3.) The Magistrate Judge held that the motion was untimely under Local Civil Rule 7.1(i). (Id. at 3.) As to the substance of the motion, the Magistrate Judge held that any alleged communications between Tuchman and the Hamilton Park Certifiers were "simply not relevant" because "their authorization or lack thereof to … Tuchman [was] of no consequence." (Id. at 4.) Rather, the relevant communications with respect to expanding jurisdiction would have occurred between Arbitrator Scheinman and Tuchman alone. (Id.) With respect to consent, the Magistrate Judge held that Hamilton Park failed to meet its burden of showing a factual dispute sufficient to warrant discovery. (Id. at 4–5.)

Hamilton Park appealed from the Magistrate Judge's decision to this Court on January 27, 2014. (Dkt. 47.) We affirmed the Magistrate Judge's decision on the grounds that the motion for reconsideration was untimely-filed. (Dkt. 51 at 4 ("Because the motion for reconsideration was untimely, the Court concludes that the Magistrate Judge did not abuse his discretion or commit a clear error of law by denying the motion.").)

## II.    DISCUSSION OF LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § ("Section") 1, et seq., permits a district court to vacate an arbitration award upon application by any party if: (1) it was

10

procured by corruption, fraud, or undue means; (2) there was "evident partiality or

corruption" with respect to the arbitrator; (3) the arbitrator committed misconduct by refusing

to postpone the hearing, refusing to hear pertinent and material evidence, or otherwise

committing misbehavior that prejudiced the rights of any party; or (4) the arbitrator "exceeded

[his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the

subject matter submitted was not made." 9 U.S.C. § 10(a).  The FAA, however "was enacted

to foster the public policy favoring arbitration and to give effect to parties' contractual

agreements to arbitrate." Jeereddi A. Prasad, M.D., Inc. v. Investors Assocs., Inc., 82

F.Supp.2d 365, 368 (D.N.J. 2000).  "When the parties include an arbitration clause in their

[CBA], they choose to have disputes concerning constructions of the contract resolved by an

arbitrator." Citgo Asphalt Ref. Co. v. Paper, Allied-Indus., Chem., & Energy Workers Int'l

Union Local No. 2-991, 385 F.3d 809, 815 (3d Cir. 2004) (internal citation omitted).  A

district court, thus, has very limited authority to vacate an arbitration award, and cannot

overrule an arbitrator simply because the court disagrees with the arbitrator's construction of

the contract at issue.  United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d

376, 379 (3d Cir. 1995); see also Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003)

(stating that a district court may vacate an arbitration award "only under exceedingly narrow

circumstances").

A district court must enforce an arbitration award so long as the arbitrator arguably

construed or applied the contract, and even if the arbitrator has committed "a serious error."

Suburban Transit Corp., 51 F.3d at 379.  A district court may not correct legal or factual errors

made by an arbitrator.  Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d

237, 240 (3d Cir. 2005); see also News Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark

Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990).  "Accordingly, the award

stands even if the court finds the basis for it to be ambiguous or disagrees with its conclusions

under the law."  Citgo Asphalt Ref. Co., 385 F.3d at 816 (internal citation and quotation

omitted).  A district court can only disturb an arbitrator's award if the arbitrator acted with

manifest disregard for the agreement or issued "his own brand of industrial justice."

Suburban Transit Corp., 51 F.3d at 380; United Paperworkers Int'l Union, AFL-CIO v.

Misco, Inc., 484 U.S. 29, 36 (1987) (internal citation and quotation omitted).  Thus, an

arbitration award will stand unless there is "absolutely no support at all in the record justifying

the arbitrator's determinations."  Newark Typographical Union, Local 103, 918 F.2d at 24

(internal citation omitted).

　　　An arbitration award based on the construction of a collective bargaining agreement

cannot be vacated if the award "draws its essence" from the agreement.  Misco, Inc., 484 U.S.

at 36 (internal citation and quotation omitted); see also Eichleay Corp. v. Int'l Ass'n of

Bridge, Structural & Ornamental Iron Workers, 944 F.2d 1047, 1056 (3d Cir. 1991).  An

arbitration award "draws its essence" from a CBA if the arbitrator's interpretation "can *in any*

*rational way* be derived from the agreement, viewed in light of its language, its context, and

any other indicia of the parties' intention."  Brentwood Med. Assocs., 396 F.3d at 241

(internal citation omitted) (emphasis in original).  Moreover, an arbitration award must

contravene a "well-defined and dominant" public policy in order for a district court to

invalidate the award on public policy grounds.  Exxon Shipping Co. v. Exxon Seamen's

Union, 993 F.2d 357, 360 (3d Cir. 1993) (internal citation and quotation omitted).

12

### III.    LEGAL STANDARD APPLIED HERE

Hamilton Park argues that the Award cannot stand because Arbitrator Scheinman: (1) failed to procure valid consent from the parties to expand the scope of his jurisdiction, as required under the plain language of the CBA, and thereby deviating from the essence of the CBA; (2) exceeded his jurisdictional scope under the plain language of the CBA, thereby deviating from the essence of the agreement; and (3) issued an award that is void as against public policy.  The Court analyzes each argument, and the Union's arguments in opposition, below.

### A.    Plain Language of the CBA: Consent

#### 1.    Hamilton Park's Arguments

Hamilton Park argues that Arbitrator Scheinman did not obtain valid consent to expand the scope of his jurisdiction pursuant to Article 34.3, which the Court provides in the margin for convenience.  (Dkt. 63-1 at 6.)[9]  According to Hamilton Park, because consent was not obtained in writing, Hamilton Park "never agreed to waive its rights to terminate the existing CBA and negotiate a new collective bargaining agreement, change the terms of the existing CBA, or expand the Arbitrator's jurisdiction to allow him to issue a multi-year Award."  (Id. at 13.)

Hamilton Park also challenges the factual basis for Arbitrator Scheinman's decision to expand the scope of his jurisdiction.  (Id. at 11–13.)  Hamilton Park argues, for example, that Arbitrator Scheinman "clearly went beyond his limited jurisdiction … without any

---

[9] Article 34.3 states: "This Agreement shall not be changed, altered, modified or amended, unless in writing, and signed by the authorized representatives of the parties."  (Dkt. 17-2 at 41.)

13

reference to evidence or testimony." (Id. at 12.)  Hamilton Park also challenges the validity of

the consent on the grounds that Arbitrator Scheinman "failed to identify the individuals who

communicated this purported agreement or tentative agreement on behalf of the Parties,

when they did it and how they agreed [his] jurisdiction permitted a multi-year Award."

(Id. at 11 (internal quotation omitted).)

Hamilton Park also cites to the statements of the Hamilton Park Certifiers in an effort to

demonstrate invalid consent as to this issue.  (See generally id.)  Cousins, for example, was

actively involved in the labor negotiations.  (Id. at 14.)  She stated that she was "surprised"

when she read the multi-year award, because she believed that Arbitrator Scheinman's

jurisdiction was limited to the fifth year of the CBA.  (Id.)  Moreover, according to Wuertz,

Hamilton Park did not consent for Tuchman to expand the scope of Arbitrator Scheinman's

jurisdiction.  (Dkt. 17-2 at 7.)  Based upon these statements, Hamilton Park submits that it

"never agreed to waive its rights to terminate the existing CBA and negotiate a new collective

bargaining agreement, change the terms of the existing CBA, or expand the Arbitrator's

jurisdiction to allow him to issue a multi-year Award."  (Dkt. 63-1 at 13.)

### 2.    The Union's Arguments

The Union contends that the parties provided valid consent and submits factual and

legal arguments in support thereof.  From a factual standpoint, the Union argues that the

parties to the CBA authorized Arbitrator Scheinman to issue a multi-year award.  (Dkt. 62-1

at 7.)  As a legal matter, however, the Union contends that the only relevant issue is whether

Tuchman, in his representation of the Bargaining Group, "consented to such an award."  (Id.

at 8.)  With respect to any alleged lapse in communication between Tuchman and the

14

Hamilton Park Certifiers, the Union replies that Hamilton Park's "gripe" must rest with Tuchman.  (Id. at 8.)  The critical question, in the Union's view, is whether the Award "is rationally derived either from the agreement between the parties or from the parties' submission to the arbitrator," and thus "the terms of the award are not 'completely irrational.'"  (Id. at 11–12.)  The Union also contends that Hamilton Park's "failure to object to the lack of a signed writing prior to issuance of the award is fatal to its case."  (Id. at 15.)

The Union also defends the Award on the grounds that the Court should defer to Arbitrator Scheinman's interpretation of Article 34.3 as it pertained to arbitration proceedings.  (Id. at 16–17.)  The Union speculates that Arbitrator Scheinman may have viewed Article 34.3 in two ways.  (Id.)  First, the Union suggests that Arbitrator Scheinman believed that arbitration proceedings "did not modify the parties' agreement" but rather "established a new agreement" to which Article 34.3 did not apply.  (Id. at 16 (emphasis in original omitted).)  Second, the Union postulates that Arbitrator Scheinman concluded that the writing requirement under Article 34.3 did not apply to arbitration proceedings.  (Id. at 16–17.)  Finally, the Union submits that the parties were permitted to orally waive the writing requirement under New Jersey contract law.  (Id. at 17–18.)

### 3.    Analysis

The Court finds no compelling reason to vacate the Award as lacking valid consent. Hamilton Park provides no argument – grounded in fact or law – to dispute Arbitrator Scheinman's determination that both parties consented to expanding the scope of his jurisdiction.  The Court notes, however, that it cannot decide whether Tuchman provided valid consent because neither party has clarified this issue.  But the Court need not do so here

because the Court cannot challenge Arbitrator Scheinman's finding that the parties consented to expanding his jurisdiction.  Misco, Inc., 484 U.S. at 36 ("[C]ourts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract") (emphasis added).[10]  Accordingly, the Court defers to Arbitrator Scheinman's finding that consent was valid as obtained.  News Am. Publ'ns, Inc., 918 F.2d at 24.[11]

The Court also finds that Arbitrator Scheinman's decision to expand the scope of his jurisdiction, upon obtaining consent from the parties, did not deviate from the essence of the CBA.  In addition to obtaining the parties' consent, Arbitrator Scheinman explained the rationale for his decision in a thorough opinion.  See supra pp.6–7 (describing the basis for Arbitrator Scheinman's decision).  Notably, the parties' respective bargaining positions were the crux of his explanation.  See id.  Arbitrator Scheinman explained, as just one example, that expanding the scope of his jurisdiction would permit him to reach an amenable agreement for both parties, which was indeed a central purpose of the CBA.  See id.  (See also dkt. 17-2 at 13 ("it is recognized that the efficient and orderly method of establishing and maintaining peaceful and harmonious labor relations and of dealing with problems and controversies arising out of employment is through negotiations and agreement, rather than through strikes and lockouts").)  Because the opinion justifies Arbitrator Scheinman's decision to expand his

[10] Because the Court defers to Arbitrator Scheinman, the Court need not analyze whether the parties to the CBA were permitted to provide oral consent under New Jersey law.  See supra p.15 (describing the Union's argument that the parties' provided valid oral consent under New Jersey common law).

[11] The Court is particularly inclined to defer to Arbitrator Scheinman as to this issue, because Hamilton Park has twice-failed to persuade the Magistrate Judge that the means by which Tuchman consented to the expanded jurisdictional window warrants further discovery.  See supra pp.8–10.

jurisdiction, the Court is not at liberty to reevaluate the issue.  See News Am. Publ'ns, Inc., 918 F.2d at 24 ("[T]here must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award.")

The Court, for the above-stated reasons, finds that Arbitrator Scheinman's decision to expand his jurisdiction – upon consent of the parties and in the interest of furthering the parties' respective collective bargaining proposals – was rationally related to the CBA. Accordingly, the Court does not find that Arbitrator Scheinman deviated from the essence of the CBA by expanding the scope of his jurisdiction without having obtained written consent. Brentwood Med. Assocs., 396 F.3d at 241 (stating an award draws its essence from a CBA if it "can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention") (internal citation omitted).

### B.      Plain Language of the CBA: Jurisdiction

Hamilton Park argues that the parties adopted certain Articles in the CBA to provide "specific safeguards … to prohibit the Contract Arbitrator from having carte blanche." (Dkt. 63-2 at 6.)  More specifically, Hamilton Park argues that Arbitrator Scheinman disregarded Articles 34.1, 34.2, 33, and 11 of the CBA, during arbitration proceedings and upon issuing the Award, sufficient to deviate from the essence of the agreement.  (Dkt. 63-1 at 6–8.)  The Union disagrees.  (Dkt. 62-1 at 14.)  The Court analyzes each Article below, providing the text in the margin for convenience.  The Court, for the following reasons, does not find that Arbitrator Scheinman's expanded jurisdiction deviated from the essence of the CBA.

### 1.     Hamilton Park's Arguments

Hamilton Park argues that Arbitrator Scheinman deviated from the essence of the CBA by expanding his jurisdiction in violation of Article 34.1.[12]  (Dkt. 63-1 at 17–20.) Specifically, Hamilton Park argues that Arbitrator Scheinman disregarded his jurisdictional limitation under Article 34.1 "to reopen and negotiate wages … to be effective for the fifth (5th) year of this agreement."  (Id.)  According to Hamilton Park, Arbitrator Scheinman acted outside the scope of his contractually-delegated authority by ignoring "the plain language of the collective bargaining agreement that limited his jurisdiction to items not yet settled related to wages, hours and general terms and conditions of employment for the fifth year of the CBA only."  (Id. at 17.)  Moreover, Hamilton Park contends that the requirement that the parties arbitrate "as herein set forth" in Article 34.1 limited the arbitration to the one-year jurisdictional window.   (Dkt. 63-2 at 13.)[13]

---

[12] Article 34.1 states, in relevant part:

> This agreement shall become effective from March 13, 2008 and shall remain
> operative and binding upon the parties hereto … and shall apply … until midnight
> of February 28, 2013 …. The Union shall have the right ninety (90) days prior to
> February 28, 2012 to reopen and negotiate wages (minimum and across the board
> increases), hours and general terms and conditions of employment, to be effective
> for the fifth (5th) year of this agreement.  If the parties have not reached agreement
> by … February 28, 2012, the items not yet settled shall be submitted to arbitration
> as herein set forth, and the Award shall be final and binding.

(Dkt. 17-2 at 40.)

[13] Hamilton Park argues the same with respect to Article 34.2, which similarly states: "[i]f the parties fail to agree, the items not yet settled shall be submitted to arbitration as herein set forth."  (Dkt. 17-2 at 40.)

Hamilton Park also argues that Article 33 barred Arbitrator Scheinman from expanding the scope of his jurisdiction.  (Dkt. 63-1 at 6.)[14]  Under Hamilton Park's interpretation, Article 33 provided an absolute bar for the parties to deviate from the CBA.  (Id.)  Hamilton Park also cites Article 11.7, which governed grievance and arbitration procedures.  (Id. at 6, 19.)[15]  Hamilton Park argues that Article 11.7 confined "all of the rights and privileges" of the parties to those established under the CBA.  (Id.)

Hamilton Park cites several cases in support of the argument that the award deviated from the essence of the CBA, which the Court will analyze infra Section B.3.  (Dkt. 63-1 at 17–18 (citing Jersey Nurses Econ. Sec. Org. v. Roxbury Med. Grp., 868 F.2d 88 (3d Cir. 1989); Citgo Asphalt Ref. Co., 385 F.3d at 809; Pa. Power Co. v. Local Union No. 272, 276 F.3d 174 (3d Cir. 2001)).)

### 2.      The Union's Arguments

The Union argues that the Articles of the CBA cited by Hamilton Park did not limit the jurisdictional scope of arbitration.   (Dkt. 62-1 at 14 ("Neither an integration clause, nor a clause preventing an arbitrator from modifying the agreement, limits the scope of the parties' submissions to arbitration.").)  According to the Union, no Articles cited by Hamilton Park governed "how the parties could, once in interest arbitration, resolve … issues" that fell

---

[14] Article 33 states, in relevant part: "The terms and conditions of employment as set forth in this Agreement shall govern the relations between the Employer and his respective employees, and no deviation from or modifications of said terms and conditions of employment should be permitted."  (Dkt. 17-2 at 40.)

[15] Article 11.7 states, in relevant part: "It is understood and agreed that all of the rights and privileges created by or implied from this Agreement shall be enforceable only by the Union, [the Bargaining Group], and only in the manner established by this Agreement."   (Dkt. 17-2 at 22.)

outside the term of the CBA.  (Id. at 15.)  The Union also argues that the Award must stand

because the CBA imposed no such limitation upon the parties.  (Id.)[16]

### 3.   Analysis

The Court rejects Hamilton Park's argument that it is "constrained by the Arbitrator's

interpretation of the contract and factual finding that his jurisdiction is limited to the 5th

year of the Agreement."  (Dkt. 63-2 at 8.)  The Court finds that the Articles cited by

Hamilton Park provide no basis for vacating the arbitration award, because the parties

consented to expanding the scope of Arbitrator Scheinman's jurisdiction.  See supra pp.15–

17.  Once parties to a CBA "agree to allow an arbitrator to go beyond the express terms" of

the agreement, the parties may agree to submit specific issues to arbitration.  High Concrete

Structures, Inc. of N.J. v. United Elec. Radio & Machine Workers of Am., Local 166, 879

F.2d 1215, 1218–19 (3d Cir. 1989).[17]  The parties here were bound by the mutually-provided

consent for Arbitrator Scheinman to expand his jurisdictional window at his discretion.  Id. at

1219 (parties are free, through their submission, to allow the arbitrator to decide issues that go

beyond the express terms of the agreement).

The Court also rejects the cases upon which Hamilton Park relies as factually-

inapposite.  The arbitrator in Jersey Nurses Econ. Sec. Org., for example, deviated from the

essence of the agreement by inserting "a new contract provision from among competing

---

[16] The Union also defends the validity of the Award on the grounds that both parties consented to
expand the scope of Arbitrator Scheinman's jurisdiction.  According to the Union, the Arbitrator's
finding that the parties "authorized him to issue a multi-year award is dispositive to this case" because
"the parties' submission to arbitration defines the scope of the arbitrator's authority."  (Id. at 14.)

[17] Such submissions "may empower an arbitrator to resolve disputes that go beyond the four corners"
of a CBA.  High Concrete Structures, Inc. of N.J., 879 F.2d at 1219.

proposals by the parties, rather than interpreting the existing agreement." Jersey Nurses Econ.
Sec. Org., 868 F.2d at 90.  Likewise, the arbitrator in Citgo Asphalt Ref. Co. deviated from
the essence of the agreement in finding that an oil refiner's zero tolerance drug abuse policy
was unreasonable despite unrebutted testimony that the three largest companies in the
industry enacted zero tolerance policies.  Citgo Asphalt Ref. Co., 385 F.3d at 813, 819.
Finally, the United States Court of Appeals for the Third Circuit set aside the arbitration
award in Pa. Power Co. because the arbitrator "strayed far beyond the scope of arbitration" by
issuing an award that directly conflicted with the express provisions of the agreement without
obtaining consent from the parties.  Pa. Power Co., 276 F.3d at 181.

  As compared to the cases cited by Hamilton Park, here, Arbitrator Scheinman
determined that the parties to the CBA consented to expanding the scope of his jurisdiction.
Moreover, Article 11.7 of the CBA gave Arbitrator Scheinman the power to: (1)
determine the scope of his jurisdiction; (2) determine all questions of arbitrability; and (3)
grant all appropriate remedies, including "mandatory and injunctive relief" and an
"appropriate measures of damages." (Dkt. 17-2 at 21.)  Arbitrator Scheinman therefore
issued the Award pursuant to his arbitrational powers under the CBA.  (See id.)  The
Court, for the above-stated reasons, finds that Arbitrator Scheinman's decision to expand his
jurisdiction was rationally-derived from the CBA sufficient to draw from its essence.  Pa.
Power Co., 276 F.3d at 178 ("[I]f the arbitrator's interpretation is in any rational way derived
from the collective bargaining agreement, the arbitration award will not be disturbed.");
Hruban v. Steinman, 40 Fed.Appx. 723, 724 (3d Cir. 2002) ("the form of the award must be

rationally derived either from the agreement between the parties or from the parties' submission to the arbitrators").

### C.    Public Policy

Hamilton Park argues that the Award violates public policy in a manner that "is so offensive to the principles of labor law and contract negotiation that it must be vacated in its entirety."  (Dkt. 63-1 at 1, 22–27; dkt. 63-2 at 9–14.)  Hamilton Park relies upon the public policy considerations behind the National Labor Relations Act ("NLRA") to support this argument.  The Court disagrees and provides the following analysis.

### 1.    Hamilton Park's Arguments

Hamilton Park argues that the Award contravenes the public policy considerations under the NLRA and "the policy of the national labor laws that the cause of industrial peace and stability is best served when labor agreements are achieved through the balance of bargaining advantages set by economic power realities." (Dkt. 63-1 at 24.)  The Award, Hamilton Park argues, thwarts the public policy behind the NLRA because it "effectively rendered a new collective bargaining agreement that went well beyond the current term" and included a new reopener provision (hereinafter "Award Reopener Provision"), thereby denying the Bargaining Group the right to renegotiate in 2015.  (Id. at 23.)[18]

---

[18] Pursuant to the Award Reopener Provision:

> The Union shall have the right one hundred twenty (120) days prior to June 30, 2015, to reopen and negotiate wages (minimum and across the board increases), hours and general terms and conditions of employment, to be effective for the final year of this Agreement.  If the parties have not reached agreement by June 30, 2015, the items not yet settled shall be submitted to arbitration as hearings [sic] set forth, and the Award shall be final and binding.

(Dkt. 17-2 at 68.)

Hamilton Park also argues that the insertion of the Award Reopener Provision was prohibited as a self-perpetuating unfair labor practice, and cites several cases in support of this argument.  (Id. at 23–24.)

### 2.    The Union's Arguments

The Union argues that the Award does not violate public policy, because Hamilton Park does not provide a factual basis for the Court to infer that consent was not obtained by both parties.  (Dkt. 62-1 at 19–20.)  The Union relies upon its contention that the Bargaining Group consented to the expanded jurisdiction in support of this argument.  (Dkt. 64 at 5.)  The Union also argues that parties bound by a CBA can waive "their duty to bargain provided there is clear evidence of their intent to do so."  (Id. at 5–6.)  With respect to the parties' consent here, the Union submits that "the parties clearly intended to forgo bargaining in favor of interest arbitration."  (Id. at 6.)

The Union also contends that Hamilton Park mischaracterizes the Award as a "new contract."  (Id. at 6.)  The Union argues that the Award here is a "multi-year interest arbitration award" which "is, by definition, a new agreement that sets terms and conditions of employment for multiple years."  (Id. at 2 n.3.)  In support of this argument, the Union observes that Arbitrator Scheinman was retained to establish "a new agreement based on the issues submitted by the parties."  (Dkt. 62-1 at 13.)

The Union also argues that Hamilton Park's reliance on the NLRA is misplaced, because arbitration is a valid alternative to collective bargaining.  (Dkt. 64 at 5–6.)  Under the Union's interpretation, the NLRA mandates bargaining at the request of one party, but "not in circumstances where parties mutually agree to establish new contract terms through other

means." (Id. at 5.)  The Union also argues that arbitration promotes the underlying policy of the NLRA by "providing for peaceful resolution of labor disputes without resort to economic weapons." (Dkt. 62-1 at 19.)

### 3.    Analysis

The Court rejects Hamilton Park's argument that the Award violates well-defined and dominant public policies under the NLRA and other "labor laws."  Hamilton Park, in so arguing, overlooks the fact that the parties did not enter arbitration until collective bargaining efforts failed.  See supra p.4.  Moreover, the Union triggered the Reopener Article and entered arbitration pursuant to the bargained-for CBA.  (Dkt. 62-1 at 7 (describing that the parties were "unable to reach agreement" when "the Union reopened the contract").)  Thereafter, the parties consented to expanding the scope of Arbitrator Scheinman's jurisdiction on a discretionary basis.

The Court also rejects Hamilton Park's reliance on the NLRA as unduly narrow. The NLRA, as amended by the Taft-Harley Act, likewise "adopts a national policy favoring resolution of labor-management disputes by arbitration."  High Concrete Structures, Inc. of N.J., 879 F.2d at 1218.  Hamilton Park provides no compelling argument that the bargaining interests of the parties outweighed the countervailing national policy in favor of arbitration.

The Court also finds that the cases cited by Hamilton Park in support of finding the Award Reopener Provision void as against public policy are distinguishable from the facts here.  (See, e.g., dkt. 63-1 at 23–26; see also dkt. 63-2 at 9.)  Significantly, none of these cases involved a situation where an arbitrator inserted a reopener provision as part of an arbitration

award upon obtaining the parties' consent.  (See dkt. 63-1 at 23–26 (citing Am. Metal Prods., Inc. v. Sheet Metal Workers Int'l Ass'n, 794 F.2d 1452, 1456–57 (9th Cir. 1983) (employer objected to the inclusion of an interest arbitration clause while bargaining with the labor union); Sheet Metal Workers' Int'l Ass'n, Local 14 v. Aldrich Air Conditioning, 717 F. 2d 456, 457 (8th Cir. 1983) (arbitration clause unenforceable where union "bargained to impasse over the issue of whether to include an interest arbitration clause in the new collective bargaining agreements"); N.L.R.B. v. Columbus Printing Pressmen & Assistants' Union No. 252, 543 F.2d 1161, 1164 (5th Cir. 1976) (invalidating interest arbitration clause where union insisted "to impasse" that the employer include it in the CBA)).)[19]

The record here, as opposed to the cases cited by Hamilton Park, is devoid of facts demonstrating that the Union insisted upon including the Award Reopener Provision during the course of collective bargaining.  Moreover, Hamilton Park provides no factual background as to whether the Bargaining Group objected to the inclusion of the Award Reopener Provision in the first instance.  Rather, the record indicates that the parties deferred to Arbitrator Scheinman by consenting to expand his jurisdiction without defining the boundaries of his discretion.  Accordingly, the Court finds that the parties' consent – in the absence of any objection by Hamilton Park during the course of labor negotiations – does not render the Award Reopener Provision as void against public policy.  Graphic Arts Int'l Union

---

[19] The Court agrees with the Union that Phoenix Newspapers, Inc. v. Phoenix Hailers Union Local 752, 989 F. 2d 1077, 1082–83 (9th Cir. 1993) does not apply here because the arbitrator in Phoenix conducted improper interest arbitration when he was empowered only to interpret the parties' existing agreement.  (See dkt. 64 at 6–8.)

Local 97B v. Haddon Craftsmen, Inc., 796 F.2d 692, 698 (3d Cir. 1986) ("Judicial review of a labor arbitration award is limited to ascertaining whether the arbitrator acted within the scope of the arbitration agreement.") (internal citation and quotation omitted); United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 584 (1960) ("But if courts, in order to determine arbitrability, were allowed to determine what is permitted and what is not, the arbitration clause would be swallowed up by the exception.")

Nor is the Court persuaded that the Union acted in bad faith during the course of bargaining sufficient to contravene bargaining obligations under the NLRA.  Hamilton Park does not state a single act on the Union's part that undermined "the social policy of harmonious relations between labor and management."  (Dkt. 63-2 at 10.)  Rather, the parties here, pursuant to Article 11.7 of the CBA, "agreed that the maintenance of a peaceful and constructive relationship between the Union … [and the Bargaining Group] … require the establishment of cooperative use of the … arbitration machinery for the settlement of all … disputes…"  (Dkt. 17-2 at 21.)  Accordingly, the Court will not vacate the Award as against public policy.  Exxon Shipping Co., 993 F.2d at 360 ("we may vacate an arbitration award if it violates a 'well-defined and dominant' public policy, which we must 'ascertain[ ] by reference to the laws and legal precedents and not from general considerations of supposed public interests…'") (internal citation omitted).

26

## CONCLUSION

The Court, for the above-stated reasons, will confirm the Award.  The Court will issue

an appropriate order and judgment.


      s/ Mary L. Cooper      
**MARY L. COOPER**
United States District Judge

**Dated:** May 27, 2015